DECISION.
{¶ 1} Defendant-appellant Joseph Elliott presents on appeal a single assignment of error, in which he challenges the trial court's denial of his motion for a new trial. Upon our determination that the court properly denied the motion, we affirm the judgment entered below.
 {¶ 2} Elliott was convicted in January of 1996 on two counts of rape and two counts of aggravated burglary. We affirmed the judgment of conviction in December of that year. See State v. Elliott (Dec. 24, 1996), 1st Dist. No. C-960072. Elliott failed to perfect a timely appeal from our decision, and the Supreme Court of Ohio denied leave to file a delayed appeal. See State v. Elliott (1999), 87 Ohio St.3d 1442,719 N.E.2d 5.
 {¶ 3} In November of 1996, before our decision in his direct appeal, Elliott filed with the trial court a motion seeking the release of evidence for DNA analysis. In support of this motion, he presented the following argument:
 {¶ 4} "One of the most important aspects of the State's case was evidence concerning [three] blood stains on the nightgown of the victim. [Two] of these spots were tested by Cellmark labs and subjected to DNA analysis. The [DNA] analysis excluded [Elliott as a source of the blood]. A third spot was only blood typed [by the Hamilton County Coroner's office]. [Elliott] could not be excluded [as a source of the blood in the third spot] by that [blood-typing] analysis. DNA testing was never requested to be conducted [on the third spot].
 {¶ 5} "* * * During the trial the prosecution relied heavily on the inference to be drawn from the failure [of the blood-typing analysis conducted on the third spot] to exclude [Elliott as a source of the blood] * * * ."
 {¶ 6} Thus, Elliott sought the release for DNA testing of that portion of the victim's nightgown containing the third of the three bloodstains. On December 12, 1996, the court denied the motion. In March of 1997, Elliott again moved for the release of the evidence. The trial court granted this motion.
 {¶ 7} On January 12, 2001, Elliott filed, pursuant to Crim.R. 33, an "Application for [an] Order Allowing [a] Motion for New Trial" and a "Motion for New Trial Due to Newly Discovered Evidence." Elliott asserted therein, and offered evidentiary material to show, that he had been diligent in obtaining DNA testing "as soon as it [had been] economically feasible," and that DNA testing of the third bloodstain had excluded him as the source of the blood. The trial court did not rule upon Elliott's "Application for [an] Order Allowing [a] Motion for New Trial," but on January 17, 2001, the court, without elaboration, placed of record an entry overruling his motion for a new trial.
 {¶ 8} Elliott did not timely appeal this entry.[1] But, on November 18, 2002, he filed with this court a motion pursuant to App.R. 5(A), requesting leave to file a delayed appeal. By entry dated December 30, 2002, this court granted leave, and this appeal ensued.
 {¶ 9} On appeal, Elliott advances a single assignment of error, in which he contends that the common pleas court erred in denying his motion for a new trial "without comment." We find no merit to this contention.
 {¶ 10} To prevail on a Crim.R. 33(A)(6) motion for a new trial on the ground of newly discovered evidence, the movant must demonstrate that the evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro (1947), 148 Ohio 505,76 N.E.2d 370, syllabus. A motion for a new trial is directed to the sound discretion of the trial court, and the court's decision will not be reversed on appeal in an absence of an abuse of discretion. See State v.Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus.
 I. {¶ 11} We note preliminarily that the assignment of error challenges the trial court's denial of the new-trial motion "without comment." But Crim.R. 33 does not, as Elliott suggests, require a trial court to issue findings of fact and conclusions of law when denying a motion for a new trial.
 II. {¶ 12} Elliott also asserts that he was unavoidably prevented from discovering the DNA-test results, and that the trial court erred in failing to hold a hearing to make this determination. Crim.R. 33(A)(6) clearly contemplates such a hearing. But, for the following reasons, we conclude that Elliott was not prejudiced by the trial court's failure to conduct a hearing.
 {¶ 13} We note that Crim.R. 33(B) permits a Crim.R. 33(A)(6) motion to be filed out of time only upon a "finding" by the court that the movant "was unavoidably prevented from discovering the evidence" within the prescribed time. The court below did not undertake a preliminary inquiry, upon Elliott's "Application for [an] Order Allowing [a] Motion for New Trial," into whether the evidence was undiscoverable within the prescribed time. Instead, the court proceeded directly to the merits of the new-trial motion. From this fact, coupled with a review of the record before us, we can only conclude that the trial court implicitly (and correctly) found that the evidence was undiscoverable before trial.
 {¶ 14} But a finding that the evidence was undiscoverable before trial, regardless of whether the finding may be implied from the record or was made expressly following a hearing, does not compel a new trial, if the movant has failed to satisfy the remaining Petro requirements. Here, the record of the proceedings at trial provides an alternative ground upon which the trial court might have based its denial of the motion. Specifically, Elliott had failed to demonstrate a strong probability that the new evidence would change the outcome if a new trial were granted.
 III. {¶ 15} Elliott was charged with rape and aggravated burglary in connection with a sexual assault upon the victim by an intruder in her home. The pivotal issue at trial was Elliott's identity as the intruder. The state presented at trial evidence that blood on the victim's nightshirt was Elliott's blood type, AB, the rarest of all blood types. The state also adduced evidence that Elliott's fingerprints were found in two places in the victim's house: on the outside of a patio door leading from an elevated balcony into the house, and on a bottle of wine that, the victim testified, had been stored in a box in her basement from the mid-1980s, when she won it at a high-school raffle, until the night in question, when she awoke to find it standing in the middle of her bedroom floor.
 {¶ 16} The results of the DNA test conducted on the bloodstain, using technology developed since the trial, excluded Elliott as the source of the blood. Under these circumstances, the newly discovered, and unavoidably undiscoverable, DNA-test results were material to the issue of Elliott's identity as the intruder. The DNA-test results wholly negated any inference that might have arisen from the blood-type evidence concerning Elliott's identity as the intruder; therefore, the DNA-test results were clearly not cumulative of the blood-type evidence, nor did they merely impeach or contradict the blood-type evidence.
 {¶ 17} But, viewing the DNA-test results in the context of the record as a whole, we cannot say that the new evidence disclosed a strong probability that it would change the outcome if a new trial were granted. Elliott took the stand at trial and offered a somewhat plausible explanation for the presence of his fingerprints on the patio door by testifying that he had peeked through the door while searching in the victim's neighborhood for a house for his grandmother. He then attempted to explain the presence of his fingerprints on the wine bottle with testimony that, in 1990, he had worked at a grocery store in the neighborhood in which the victim had resided. When viewed with the victim's testimony that the wine bottle had been stored in a box in her basement from the mid-1980s until the night of her assault, Elliott's testimony left the trier of fact with no innocent explanation for the presence of his fingerprints on the bottle.
 {¶ 18} Having thus concluded that Elliott had failed to demonstrate a strong probability that the new evidence would change the outcome if a new trial were granted, we hold that the trial court did not abuse its discretion in denying the motion for a new trial. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Sundermann, P.J., Gorman and Winkler, JJ.
[1] Instead, on May 23, 2001, Elliott filed a "[m]otion" by which he sought, pursuant to R.C. 2953.21, an "Evidentiary Hearing to Present * * * DNA Test Results." The trial court construed this "motion" as a petition for postconviction relief and denied the petition. On appeal, we affirmed. See State v. Elliott, 1st Dist. No. C-010598, 2002-Ohio-4454.